No. 2845

Second Circuit

BRITTAIN v. OLLA LUMBER

(Jan. 28, 1927.  Opinion and Decree.)

(*Syllabus by the Editor.*)

1.  **Louisiana Digest—Subrogation—Par. 14, 16; Alienation—Par. 21.**

In view of Article 2645 of the Civil Code the assignment of a laborer's claim carries the privilege granted under Act 23 of 1912.

2.  **Louisiana Digest—Subrogation — Par. 14, 16, 17; Alienation—Par. 21.**

The transfer of laborer's claim carries the privileges granted by law, Act 23 of 1912, and no express subrogation is necessary.

3.  **Louisiana Digest—Sales—Par. 304, 316.**

A vendor's lien and privilege on logs sold is not enforcible where the vendor cannot identify all or can identity only a part of the logs sold.

Appeal from the Eighth Judicial District Court of Louisiana, Parish of La Salle. Hon. F. E. Jones, Judge.

Action by Walter Brittain against Olla Lumber Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

G. W. Flowers, of Jena, attorney for plaintiff, appellee.

J. M. Henngan, of Jena, attorney for defendant, appellant.

WEBB, J.    The Olla Lumber Company, a partnership composed of W. B. Clark and W. N. Atwood, operated a sawmill which they had leased from B. E. Zeagler and J. W. Harris, and as it did not promptly meet its obligations to its laborers or persons working at the sawmill and persons who had sold it logs, as well as to its lessors, Zeagler and Harris, who had also sold logs to the company, these creditors, the laborers and persons who had furnished logs, being represented by an attorney, and Zeagler and Harris representing themselves, demanding of the lumber company a settlement, each having knowledge of the other's negotiations, but not being a party thereto.

That at this time the company had several hundred dollars in bank, some open accounts or claims against parties to whom it had sold lumber, and also some lumber on its yard, and that it gave to the attorney representing the laborers and other parties part of the money in bank and also orders on persons against whom the company had claims which together were of an aggregate amount equal to the claims of the persons represented, and to Zeagler and Harris the company gave some orders and also a chattel mortgage covering the lumber on its yard.

The orders given to the parties represented by the attorney not being paid, these parties made an assignment of their claims to one of their number, W. A. Brittain, who brought suit against the company and the individual partners for the amount of the claims held by him, setting forth the amount due him by the defendants, being thirty-three dollars, and the amount of the claims assigned to him, all of which aggregated five hundred and twenty-four dollars and twelve cents, which, he alleged, was for wages due laborers, and further alleging that the lumber company was

disposing of its property with intent to defraud its creditors, etc., and that plaintiff had a privilege on the lumber, prayed for and obtained the issuance of writs of attachment, provisional seizure and garnishment, the latter running against the Olla State Bank and the Urania Lumber Company.

Plaintiff prayed for judgment in the amount claimed and interest and for recognition of his privilege resulting from the attachment and provisional seizure, etc., and for all orders and general relief.

The Olla State Bank answered, denying that it had any funds or property belonging to the defendants, and the answer of the Urania Lumber Company reads, in part, as follows:

"Respondent, Urania Lumber Company, is not indebted to Olla Lumber Company, neither to W. B. Clark, nor William Atwood, in any sum whatsoever; further answering, respondent has purchased from Sam Shamblin four cars of lumber and is indebted to said Sam Shamblin in the amount of nine hundred eighty and 24-100 dollars; whether the said Sam Shamblin sold this lumber individually or for the Olla Lumber Company, your respondent is not in position to say, nor does respondent know whether any of the above parties have any interest whatever in the lumber purchased from Sam Shamblin."

The defendants, the company and individual partners answered, admittiing they were indebted to plaintiff and to the persons who had assigned their claims to plaintiff, but that they did not know the amount of the indebtedness, and alleged that the claims had been paid in a compromise agreement and that two of the claims alleged to have been acquired by plaintiff, one of A. J. Holloway for one hundred and twenty dollars, and J. A. Cox for ninety-six and 60-100 dollars, did not carry any privileges, and, further, that the writs had been

wrongfully issued and had damaged defendants, and reconvened for judgment in the amount of the damages alleged to have been sustained.

Zeagler and Harris filed an intervention and third opposition, in which they alleged that defendants were indebted unto them in the sum of one thousand eighty-six and 14-100 dollars, secured by a chattel mortgage on lumber, which lumber had been sold by defendant with the consent of intervenors with the specific understanding that the proceeds would be delivered to intervenors, and that the proceeds of such sale in the hands of the Urania Lumber Company had been seized by plaintiff, as shown by the answer of the garnishee, Urania Lumber Company, and that intervenors had a privilege on said funds.

They further alleged that the indebtedness claimed by plaintiff had been paid, and that the assignments made to plaintiff were invalid and did not carry the privilege securing the credits transferred, if such credits bore a privilege, which was denied; and, in the alternative, in the event the court should hold that plaintiff could recover judgment against defendant and the claims held by him bore a privilege superior to the privilege of intervenors and opponents, that the claims of A. J. Holloway and J. A. Cox did not bear a privilege, as the same arose from an indebtedness due for logs sold to defendant lumber company.

Intervenors prayed for service on Brittain, plaintiff, and the sheriff, and for judgment recognizing their privilege on the property seized and upon the proceeds, and that their privilege be recognized as of superior rank to the privilege of plaintiff, and that the property seized by plaintiff be held not subject to the writ of sequestration (sic) and attachment and

that the writs be set aside and plaintiff's demand for recognition of a privilege be rejected and the proceeds of the sale be delivered to opponents; and, in the alternative, that the claims of A. J. Holloway and J. A. Cox be held not to have borne any privilege, and for all orders and decrees necessary and general relief.

The plaintiff answered the intervention, pleading, in effect, a general denial, and, on trial, judgment was rendered in favor of plaintiff in the sum of five hundred and nineteen and 24-100 dollars with interest from date of judgment, and the judgment otherwise reads as follows:

"It is further ordered, adjudged and decreed that the lien resulting from the sequestration (sic) issued herein be recognized and enforced insofar as the claim of the plaintiff in the amount of three hundred two and 24-100 dollars ($302.24); the claim of A. J. Holloway and J. A. Cox being rejected insofar as the lien is concerned.

"It is further ordered, adjudged and decreed that the lien and privilege of the third opponents Benjamin E. Zeagler and James W. Harris by virtue of chattel mortgage, be recognized and enforced as against the property after the payment of the claims on which privilege by virtue of writ of sequestration (sic) was enforced as listed above.

"It is further ordered, adjudged and decreed that defendants pay all costs of this suit."

The plaintiff and intervenors both took orders of appeal, the intervenors alone perfecting their appealed.

While the foregoing statment may indicate that there are many questions of fact and of law at issue between the parties, we assume, however, from their briefs, that such is not the case, as the intervenors and opponents in their brief state—

"If it were only a matter of whether the defendant should or should not pay the claims of the laborers, possibly it would be well enough to render judgment as prayed for by the plaintiff";

And—

"The judgment of the trial court is, we think, in accordance with the facts insofar as rejecting the claims of Holloway and Cox, because clearly they had no lien on the proceeds of the sale of this lumber and the only objection which we urge on this appeal is that the third opponents are entitled to the entire proceeds from the sale of the lumber, with the exception of thirty-three and 30-100 dollars ($33.30) which is the amount alleged by W. Brittain to be due himself."

And plaintiff, in his brief, says:

"* * * the judgment in this case was in accordance with the facts insofar as the amount was concerned * * * we do not believe the judgment was in accordance with the law, in rejecting the lien and privilege as to Holloway and Cox."

And considering the case more or less from the statements of the parties in their briefs, we think it follows that each of the parties concedes that the other has a privilege or lien on the property or funds in the hands of the court and that the point urged on behalf of intervenors and third opponents that the assignment of the laborers' claims did not carry the privilege granted by the statute (Act No. 23 of 1912) to the laborers, and on behalf of plaintiff that the claims of Holloway and Cox bore a privilege which has been recognized as of superior rank to the privilege or lien of the intervenors.

Considering these questions in their order:

I.

We are of the opinion that the assignment of the laborers' claims carried the privilege granted under the statute.

"The sale of a credit includes everything which is accessory to the same, as suretyship, privileges and mortgages"

C. C., 2645.

And the transfer of laborers' claims carries the privileges granted by law and no express subrogation is necessary.

Saloy vs. Dragon, 37 La. Ann. 71.

II.

While the evidence establishes that Holloway and Cox sold logs to defendant, Olla Lumber Company, it does not show that the lumber seized was manufactured, in whole or in part, from such logs; and if the vendor's privilege on logs could follow the manufactured product (which we do not decide) it would not attach, as the lumber was not shown to have been manufactured from the logs. (See Newman vs. Cannon, 44 La. Ann. 579, 10 South. 933), and we conclude the claims acquired by plaintiff from Holloway and Cox did not bear any privilege.

The judgment is affirmed.