*1063
 
 SUMMERS, Justice.
 

 During the year 1959 Lucy L. Crochet entered into a written agreement with Raymond A. Martin, a contractor, to construct a building on her property at 107, 109 and 111 Hector Avenue, Metairie, Louisiana. The agreement was never recorded. The contractor executed a lien bond in favor of the property owner to hold her free from the assertion of liens and privileges against her property by materialmen and laborers. The bond was not recorded. Plaintiff, Lumber Products, Inc., furnished to the contractor, Martin, certain building materials which were delivered to the Crochet property and used by Martin in the construction of the improvement there.
 

 Subsequently Lumber Products, Inc. made demand to no avail upon the contractor, Martin, and the owner, Crochet, for payment for the materials furnished. Thereafter, on October 26, 1959, within sixty days of the last delivery of materials, and pursuant to rights accorded it by LSA-R.S. 9:4812, Lumber Products, Inc. filed written evidence of its claim in the sum of $935.72 for the balance due it in the mortgage records of Jefferson Parish, where the property is located. The claim was rein-scribed on October 25, 1960, within one year from its original recordation.
 

 Several months after the reinscription of the claim, on February 3, 1961, plaintiff, Lumber Products, Inc., the furnisher of materials, instituted suit against Crochet, the owner of the property, seeking judgment in personam in the sum of $935.72, the amount of the claim, plus the sum of $4.50 for the cost of its recordation and for interest and costs. Plaintiff further sought judgment in rem in like amount against the property and recognition of its privilege created by the recordation of the claim.
 

 To this petition defendant, Crochet, filed exceptions of no cause of action and prescription. These exceptions were overruled. Defendant then answered asserting a general denial and simultaneously filed a third party petition against Martin, the contractor, for judgment in any amount she might be adjudged to pay to plaintiff, Lumber Products, Inc., and for attorney fees, costs and expenses incurred in defending the suit, to which Martin filed a general denial.
 

 The trial court rendered judgment in plaintiff’s favor against Crochet, the property owner, both in personam and maintaining the plaintiff’s privilege against the property. The court also gave the owner, Crochet, judgment against the third party defendant, Martin, in the amount prayed for by her, plus attorney’s fees and costs.
 

 The defendant, Crochet, appealed. The third party defendant, Martin, has not appealed and the judgment as to him is final. In the court of appeal the plaintiff sought to maintain its in rem judgment only aban
 
 *1065
 
 doning the personal judgment rendered in its favor against the defendant owner. The court of appeal amended the judgment of the trial court “only insofar as to eliminate therefrom the personal judgment rendered against Lucy L. Crochet.” The judgment was affirmed maintaining plaintiff’s privilege against the property of defendant (La.App., 146 So.2d 44). We granted certiorari upon the application of defendant.
 

 The sole issue presented for review is whether the in rem action brought more than one year after the original recordation of the claim, but within one year after its reinscription, was barred by prescription under the statute.
 

 The pertinent portion of the statute, LSA-R.S. 9:4812, provides:
 

 “When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon the said property or the last performance of all services or labor upon the same, by the said furnisher of material or the said laborer, shall create a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work or improvement, as his interest may appear. The said privilege, recorded as aforesaid, shall constitute a privilege against the property for a period of one year from the date of its filing, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such right of action shall prescribe within one year from the date of the recordation of the privilege in the office of the recorder of mortgages. The effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not been renewed within one year from the date of the recordation. Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or sub-contractor, when a contract, oral or written has been enter
 
 *1067
 
 ed into, but no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim, which right of action shall not prescribe within one year of the date of its recordation, or the reinscription thereof.”
 

 This provision of the Revised Statutes is a reenactment of Section 1 of Act 323 of 1938 and is identical except for minor changes which are not pertinent to our consideration.
 

 The above statute grants two benefits to a materialman or laborer when his claim has been properly and timely recorded, namely, an in rem action and privilege against the owner’s property and a personal right of action against the owner. We are only concerned with the privilege against the property or the in rem action, the personal action having been abandoned. Such a privilege is granted, as the term implies, in derogation of common rights, for there is no preference granted to these creditors by the owner. LSA-Civil Code art. 3183. The privilege is granted by law without the consent of the owners. For this reason, statutes creating privileges having the character of that under review, being in derogation of common rights, must be considered as stricti juris and rigidly construed. Southport Petroleum Co. of Del. v. Fithian, 203 La. 49, 13 So.2d 382 (1943). Such a privilege is superior to all other claims against the land and improvements, except taxes and local assessments for public improvements or a bona fide vendor’s privilege or mortgage recorded before the work or labor is begun or any material is furnished. LSA-R.S. 9:4812. Such a privilege supersedes the homestead exemption which may be due on the affected property. La.Const. of 1921, art. 11, Sec. 2, LSA. It is a right which the nature of a debt gives to a creditor and which entitles him to be preferred before other creditors. LSA-Civil Code, art. 3186. Privileges can be claimed only for those debts to which they are expressly granted by law. LSA-Civil Code, art. 3185.
 

 Under the statute before us the privilege created in favor of the material-man by recordation of the claim against the property is for one year and “may be enforced by a civil action” and “such right of action shall prescribe within one year from the date of the recordation of the privilege.” This much of the statute is clear. It simply means that the privilege is for one year and must be enforced by a suit filed within one year of its original recordation. But it is contended that there is other language in the act which would permit suit to be instituted to assert the “right of action” after one year. The language relied upon to support that contention is this: “The effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not
 
 *1069
 
 been renewed within one year from the date of the recordation.” The “effect of registry” in the context of this statute means an effect flowing from recordation. The language of the statute states that “[a]ny person furnishing services or material or performing any labor * * * may record * * * a copy of his * * *, claim * * *, which recordation * * * shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated * * * in favor of any such person * * *.” As we read this statute the effect of registry and the only effect of registry is to “create” the “privilege” upon the land and improvements.
 

 The language that follows begins with a new sentence. It reads:
 

 “The said privilege, recorded as aforesaid, shall constitute a privilege against the property for a period of one year from the date of its filing, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and
 
 such right of action shall prescribe zvithin one year from the date of the recordation of the privilege in the office of the recorder of mort
 
 gages." (Italics ours.)
 

 This language sets out the duration of the privilege created by the recordation, provides for a right of action to enforce it and establishes the prescription of that right of action.
 

 The last quoted portion of the statute which is italicized is not an effect of registry; it has to do with the prescription of the right of action granted to enforce the privilege which has been created by the registry. The prescription established in the statute is not an effect of registry; it is an effect of other language of this law separate and apart from the language dealing with the creation of the privilege by recordation.
 

 In other words the prescription of the right of action is fixed at one year. If the legislators intended that it could be prolonged beyond that one year that intention must be clear. So when the act says “The effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not been renewed within one year from the date of the recordation”, it means the privilege ceases, for the privilege'is the effect of the registry. The converse of this proposition, then, is that if reinscription has been renewed within one year only the privilege is renewed thereby — reinscription would have no effect upon the prescription of the right of action established by the act and the prescription of the suit to enforce the privilege would not be interrupted by the reinscription. The object of the reinscription of the privilege would be to preserve its
 
 *1071
 
 effects during the pendency of a suit instituted within one year of the original recor-' dation.
 

 We think it is nécéssáry to give the act the interpretation we have given it here for, as we have noted, such an act is in derogation of common rights and must be rigidly construed in favor of the parties whose common rights are affected — the owner of the property, his ordinary and other creditors.
 

 Furthermore, the history of this act warrants the conclusion we have drawn from its language. Its predecessor, Section 12 of Act No. 298 of 1926, provided that the privilege was created for “one year from the date of its filing, unless interrupted by judicial proceeding, during which judicial proceeding said prescription shall not run.” What that act clearly meant was that reinscription of the claim that created the privilege was not required if a suit had been filed within one year. But Act 323 of 1938 amended the 1926 Act by deleting the provision of 1926 Act which declared that prescription did not run on the privilege during the pendency of a judicial proceeding. The amendment provided in lieu of the deleted language that the privilege, which was good for one year, “may be enforced by a civil action in any Court of competent jurisdiction in the parish in which the land is situated and such right of action shall prescribe within one year from the date of the recordation of the privilege in the office of the Recorder of Mortgages.” The 1938 Act then added the following language which was not contained in the 1926 Act, viz: “the effect of registry ceases, even against the owner of the property or the property itself, if the inscription had not been renewed within one year from the date of the recordation.” What this meant therefore was that instituting suit would no longer have the effect of interrupting prescription on the privilege itself. Since the 1938 Act the effect of the privilege ceases after one year unless reinscription took place. Instituting suit would no longer keep the privilege alive unless the claim had been timely reinscribed. This court so held in Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566 (1940). What the 1938 Act has done is to make the keeping of the privilege alive against the property more burdensome to the claimant of that privilege, for now it is not sufficient to institute suit to keep the privilege alive during the pendency of that suit. It is necessary to reinscribe the privilege if the suit should pend beyond one year from the date of the original recordation, otherwise the suit could not enforce a privilege which had “passed out of existence” before final judgment was obtained. On the other hand if the privilege is reinscribed within one year and suit is not instituted within one year, then the privilege becomes a hollow right for it can no longer be enforced.
 

 
 *1073
 
 It is necessary for one who seeks to avail himself of the benefits of the statute to file his claim, institute suit before the expiration of one year and, if suit has not resulted in a final judgment prior to the expiration of one year from the date of the original recordation, then, prior to the expiration of that first annual period, it would be necessary to reinscribe the privilege so that it might be kept alive during the pend-ency of the suit and until it is judicially recognized. Conceivably, suit may not be terminated at the expiration of the second annual period and it would then be necessary to reinscribe the privilege within one year from the date of the first reinscription and annually thereafter until the suit is terminated.
 

 This result is indicated by the statute for it declares that the privilege is “against the said property for a period of one year from the date of its filing.” This being so, third parties expect any evidence of this privilege or its reinscription to appear of record within one year prior to their search of the public records, otherwise, in the language of the Shreveport Longleaf Lumber Co. Case, supra, it must have “passed out of existence.”
 

 We think this a reasonable construction of the statute for a contrary construction would have the language mean that the prescription on the suit to enforce the privilege can also be interrupted by reinscription, thus granting to the claimant of the privilege the right to keep the affected property perpetually encumbered by annual reinscription without filing suit to obtain a judicial recognition of the privilege. This would clearly be contrary to the public policy of this State for it could, by creating a cloud upon the property, effectively keep it out of commerce indefinitely.
 

 Additionally, this latter interpretation is repugnant to our concept of what could reasonably have been intended in this situation. Asserting and recording a claim by a laborer or materialman is a unilateral act, and may be done without the knowledge of the owner. It would seem reasonable to require those availing themselves of this extraordinary right — for it is such — to assert that right judicially within one year and obtain its enforcement or forsake its benefits. It occurs to us that it is improbable that the legislators would have intended that a materialman could file a claim and keep it perpetually alive without confronting the owner with an assertion of the claim judicially within a reasonable time. Failure to require the claimant of the privilege to assert it judicially within a reasonable time would impose the onus upon the owner of the property to sue for its cancellation if it be unfounded. If there are onerous implications to be drawn from the ambiguous language of this act, they must be resolved against the parties in whose favor the privilege is granted.
 

 
 *1075
 
 For the reasons assigned the judgment of the court of appeal is reversed and set aside. Accordingly, plaintiff’s suit seeking recognition of the privilege is dismissed at his costs.
 

 HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeals is correct.
 

 HAWTHORNE, J., dissents, being of the opinion that the decision of the Court of Appeal is correct and should be affirmed. See 146 So.2d 44.